UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **GUARDIAN POOL FENCE SYSTEMS INC.,** | **Case No.: SACV 16-0824-DOC (JCGx)** |
| Plaintiff, | |
| | **RE CROSS MOTIONS FOR SUMMARY JUDGMNET [34, 41]** |
| vs. | |
| **SUNWEST INDUSTRIES, INC. d/b/a ALL SAFE POOL SAFETY FENCES NETS AND COVERS, and d/b/a ALL-SAFE PRODUCTS,** | |
| Defendant. | |

Before the Court are Plaintiff and Counter-Defendant Guardian Pool Fence Systems, Inc.'s ("Guardian" or "Plaintiff") Motion for Partial Summary Judgment ("Pl. MSJ") (Dkt. 34) and Defendant and Counter-Claimant Sunwest Industries, Inc. d/b/a All Safe Pool Safety Fences Nets and Covers d/b/a All-Safe Products' ("All-Safe" or "Defendant") Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Issues ("Def. MSJ") (Dkt. 34).

## I. FACTS[1]

Guardian and All-Safe both sell mesh pool fences. Defendant's Statement of Disputes of Material Fact ("Def. SDMF") (Dkt. 50) No. 5. The two compete against each other for business, and it is not uncommon for employees of the two companies to run into each other providing on-site quotes to the same customers. *Id.* A typical fence installation costs around $2,000.00 for a Guardian fence, and around $1,500.00 for an All-Safe fence. *Id.*; Plaintiff's Statement of Disputes of Material Fact ("Pl. SDMF") (Dkt. 59) No. 2.

As relevant here, Guardian owns two incontestable trademarks: U.S. Trademark Registration No. 2,963,700 for the wordmark "GUARDIAN" (the "Guardian Mark") for swimming pool fences and gates, and U.S. Trademark Registration No. 2,273,407 for a stylized variation of the Guardian Mark inside of a fenced-in pool. *Id.* No. 1. Guardian spends in excess of $300,000.00 per year on print and online marking. *Id.* No. 4. The Guardian mark is regularly featured in such advertising. *Id.*

All-Safe also owns U.S. Trade Mark Registration No. 2,420,005 for the wordmark "ALLSAFE" for "swimming pool safety barriers, namely non-metal fences. . . ." Declaration of Drew Wilson ("Wilson Decl.") (Dkt. 34-1) Ex. G. All-Safe has marketed its products under the name All-Safe since at least 1999. Pl. SDMF No. 3.

In 2008, Guardian sued All-Safe for infringing on the Guardian Mark. Def. SDMF No. 10. In that action, Guardian alleged that All-Safe had purchased the term "Guardian" as a

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motions. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

-2-

1 keyword in Google AdWords—meaning that if someone Googled the terms "Guardian Pool
2 Fence Systems," the Google search would yield a sponsored advertisement containing the term
3 "Guardian Pool Fence" but that advertisement would link to All-Safe's website. *Id.* No. 11. At
4 that time, All-Safe disputed that it ever did this. *Id.* No. 11. Instead, All-Safe stated that it had
5 listed "Guardian" as a negative keyword in its Google AdWords account. *Id.* No. 13. Once a
6 company lists a term as a negative keyword, a search including that keyword will not return the
7 company's sponsored advertisement, even if the search includes other valid keywords the
8 company has purchased. *Id.* No. 14. In the 2008 action, All-Safe asserted a counterclaim
9 against Guardian, claiming that Guardian had used "ALL SAFE" as a keyword in various
10 internet search engines. Declaration of Reed Hague ("Hague Decl") (Dkt. 41-2) Ex. E.
11 Guardian subsequently dismissed the 2008 action against All-Safe with prejudice, with each
12 party bearing its own costs. Def. SDMF No. 16.

13 Adam Sadinsky ("Sadinsky"), the Vice President of Guardian, states that in April of
14 2016 he visited a potential customer, Ken Gardener ("Gardener"). Declaration of Adam
15 Sadinsky ("Sadinsky Decl.") ¶¶ 1, 6. During the estimate, Gardner reportedly stated that he had
16 seen the Guardian name in numerous places on All-Safe's website and asked if the two
17 companies were related. *Id.* ¶ 7. Sadinsky stated they were not. *Id.* This conversation led
18 Sadinsky to investigate All-Safe's website. *Id.* ¶ 8.

19 Sadinsky found that Guardian's name appeared on All-Safe's website in several places.
20 Def. SDMF No. 20; Complaint ("Compl.") (Dkt. 1) Ex. C. Specifically, the terms "Guardian
21 Pool Covers," "Guardian Pool Safety," "Guardian Pool Fence," and "Guardian Pool Products"
22 (collectively "the Guardian Topics") all appeared as "Topics" listed in the right hand column of
23 All-Safe's website, along with many other topics such as "Swimming Pool Safety." Compl. Ex.
24 C. Each of these topics had its own page which collected all of the posts on the All-Safe
25 website that had been labeled or "tagged" with that specific topic. *Id.* Exs. D–G.

26 In each post, there was an authorship field which lists who the blog was "by." *See id.* It
27 appears that All-Safe used this authorship field as a place to insert topic labels. *See id*; Def.
28 SDMF No. 20. Guardian suggests that these tags were intended to indicate authorship, and

suggest that Guardian had authored the posts. Def. SDMF No. 22. However, this not correct as other things listed in the authorship fields of All-Safe blog posts included "Removable Mesh Pool Fence" and "Swimming Pool Safety." All-Safe could not have meant to indicate that Removable Mesh Pool Fence was an author of a blog post. The posts that are labeled or tagged with the Guardian Topics do not reference Guardian, but are generally about pool safety. *See* Compl. Exs. D–G. Nowhere do these posts offer any products for sale. *See id.*

Reed Hague, the owner and Chief Operating Officer of All-Safe, states that he did not authorize the Guardian Topics tags, and it is suggested that All-Safe's third party vendor created and added the Guardian Topics without the authorization of anyone at All-Safe. *See* Pl. SDMF No. 21.

The Guardian Topics pages were directly viewed a total of seventeen times in total by five unique users, presumably some of whom were Plaintiffs' counsel. *Id.* No. 24. However, there is no data that reflects how often the tags referencing Guardian were seen by visitors to All-Safe's website. *Id.* Seventeen views reflects less than .01% of all traffic on the All-Safe website. *Id.* Every page on All-Safe's website prominently displays the All-Safe logo. *Id.* No. 23. Shortly after the beginning of this litigation, All-Safe had its vendor remove the Guardian Topics from All-Safe's website. *Id.* No. 10.

All-Safe has produced the analytics reports for its Google AdWords campaigns from January 30, 2008 through May 5, 2016. *Id.* No. 11. These documents show that from January 2008 until February 2011, "guardian pool fence" was a search term used by All-Safe. Hague Decl. Ex. G at 59. During that time, there were four clicks based on this search term. *Id.* It appears that the "guardian pool fence" campaigns were targeted only at Spain, Portugal, Puerto Rico, and Costa Rico. *Id.* These campaigns appear to have been discontinued in February 2011, and in any event there have been no search results generated for All-Safe based on the term "guardian pool fence" since February 2011. *See id.* From January 2008 to May 2016, all of All-Safe's AdWords campaigns all together generated well over 800,000 clicks. *See id.*

During the course of litigation, it came to light that from March 18, 2016 until June 3, 2016 Guardian included "all safe pools" in its Google AdWords, along with eighteen other

search terms, several of which included the term "all safe" or "all-safe." Def. SDMF No. 43; PL. SDMF No. 14. Guardian argues that this was inadvertent and in contravention of its standard practice. Def. SDMF No. 44. The eighteen search terms were not added to Guardian's Bing[2] account, although Guardian's standard practice was to have the same search terms for both search engines. *Id.* No. 47. On May 23, 2016, a search for the term "all-safe" returned an ad for Guardian with the headline "all safe pools – Guardianpoolfence.com." Pl. SDMF No. 15. During the two weeks "all safe pools" was a search term for Guardian, it generated six clicks on Guardian advertisements. Def. SDMF No. 52. Nowhere on Guardian's website does the term "all safe" appear. Def. SDMF No. 53.

## II. PROCEDURAL HISTORY

Guardian filed its Complaint on May 2, 2016. In the Complaint, Plaintiff brings claims for (1) infringement of a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1), (2) unfair competition in violation of California Business and Professions Code § 17200 *et seq.* ("the UCL"), and (3) common law unfair competition. *Id.* ¶¶ 11–25.

On June 24, 2016, All-Safe filed its Counterclaim ("Countercl.") (Dkt. 18). There, Defendant brings claims for (1) trademark infringement in violation the Lanham Act, 15 U.S.C. § 1051 *et seq.* (2) unfair competition in violation of the UCL, and (3) common law unfair competition. *Id.* ¶¶ 12–24.

On April 19, 2017, Guardian filed its Motion for Partial Summary Judgment. Defendant opposed on May 2, 2017 (Dkt. 58). Guardian replied on May 8, 2017 (Dkt. 62).

On April 20, 2017, All-Safe filed its Motion for Summary Judgment. Guardian opposed on May 1, 2017 (Dkt. 49). All-Safe replied on May 8, 2017 (Dkt. 65).

## III. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477

---

[2] Bing, like Google, runs an internet search service.

U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**IV. DISCUSSION**

Guardian asks the Court to grant summary judgement for Guardian on its trademark infringement claim, and to grant summary judgment for Guardian on All-Safe's trademark infringement claim. Pl. MSJ at 11, 17. All-Safe asks the Court to grant summary judgment for All-Safe on Guardian's trademark infringement, UCL, and common law unfair business

practices claim, as well as to grant summary judgment for All-Safe on its trademark infringement counterclaim. Def. MSJ at 8–25.

### A. Guardian's Trademark Infringement Claim

Plaintiff's Complaint alleges trademark infringement in violation of 15 U.S.C. § 1114(1), also known as Section 32 of the Lanham Act. Compl. ¶¶ 11–16. This section of the Lanham Act "provides the registered owner of a trademark with an action against anyone who without consent uses a 'reproduction, counterfeit, copy, or colorable imitation' of the mark in such a way that 'is likely to cause confusion or to cause mistake, or to deceive.'" *Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1085 (9th Cir. 1998) (quoting 15 U.S.C. § 1114(1)). To establish a trademark infringement claim, the plaintiff "must establish that [defendant] is using the mark confusingly similar to a valid, protectable trademark of [plaintiff's]." *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999).

The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes *prima facie* evidence of the validity of the registered mark and of the registrant's exclusive right to use the mark on the goods and services specified in the registration. *See Applied Info. Scis. Corp. v. eBAY, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007). Here, the parties have agreed that Guardian owns an incontestable trademark for the Guardian Mark. Def. SDMF No. 1. Consequently, Guardian has established they own a valid protectable trademark.

The Court turns next to the issue of whether there is a likelihood of confusion stemming from the presence of the Guardian Mark in the topics on All-Safe's website.[3] At the outset of this analysis, the Court notes that Guardian is not arguing that the inclusion of the Guardian Mark in All-Safe's Google AdWords search term constitutes infringing activity; Guardian alleges infringement based only on the Guardian Topics. Opp'n Def. MSJ at 5 n.2.

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). "The

---

[3] The Court notes that All-Safe disputes that it "used" the mark, arguing that its third party vendor incorporated the Guardian Mark into All-Safe's website without All-Safe's knowledge or consent. Def. MSJ at 9. As the Court concludes that there is no likelihood of confusion, it does not reach this argument.

confusion must 'be probable, not simply a possibility.'" *Murray v. Cable NBC*, 86 F.3d 858, 861 (9th Cir.1996).

"Courts generally consider eight factors in determining whether a likelihood of confusion exists between products bearing an original trademark and allegedly infringing products." *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, No. CV 15-08157-BRO (Ex), 2015 WL 6680807, at *6 (C.D. Cal. Oct. 19, 2015); *see also AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979), *abrogated on other grounds by Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 810 n.19 (9th Cir. 2003).

The eight factors, typically referred to as the *Sleekcraft* factors, are:

> (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.

*Rearden LLC v. Rearden Commerce, Inc*., 683 F.3d 1990, 1209 (9th Cir. 2012)) (internal quotation marks omitted); *see also Sleekcraft*, 599 F.2d at 348–49. These factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Id.* (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc*., 638 F.3d 1137, 1145 (9th Cir. 2011)) (internal quotation marks omitted). "[S]ome factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important." *Id.* (citation and internal quotation marks omitted). Nevertheless, "it is often possible to reach a conclusion . . . after considering only a subset of the factors." *Id.* (citation and internal quotation marks omitted).

The Ninth Circuit has noted that in evaluating trademark infringement in the context of Internet searches, there is an additional factor of particular importance: "the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." *Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 936 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 1231 (2016). While Guardian is not alleging infringement on the basis

1 of a search, but rather on the basis of a webpage layout and tags in a topics section, this factor
2 remains applicable because the full context of the webpage is important to assessing how a
3 consumer would understand the Guardian Topics. In instances where it is faced with online
4 trademark infringement, in some cases the Ninth Circuit has eschewed the *Sleekcraft* test in
5 favor of a more streamlined inquiry: "(1) Who is the relevant reasonable consumer?; and (2)
6 What would he reasonably believe based on what he saw on the screen?" *Id.* at 937. The Court
7 finds this inquiry more appropriate here than the traditional *Sleekcraft* analysis, because it is a
8 website rather than a product that bears the mark.

9 As to the first question, "[t]he nature of the goods and the type of consumer is highly
10 relevant to determining the likelihood of confusion . . . ." *Network Automation*, 638 F.3d at
11 1152. "Confusion is less likely where buyers exercise care and precision in their purchases,
12 such as for expensive or sophisticated items." *Au–Tomotive Gold, Inc. v. Volkswagen of Am.,
13 Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006). Here, the pool nets the parties sell typically cost in
14 excess of a thousand dollars. *See* Def. SDMF No. 5. The Ninth Circuit has found that goods
15 that sell for hundreds of dollars are expensive. *Multi Time Mach., Inc.*, 804 F.3d at 937.
16 Accordingly, the costs of the pool nets indicates that consumers are more likely to exercise care
17 when shopping for the nets. *See id.* Therefore, "the relevant consumer is a reasonably prudent
18 consumer accustomed to shopping online . . . [u]nreasonable, imprudent and inexperienced
19 web-shoppers are not relevant." *Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171,
20 1176 (9th Cir. 2010).

21 The second question is the core of the Court's inquiry here: how would the reasonably
22 prudent online shopper understand All-Safe's Guardian Topics? The fact that the Guardian
23 Topics are listed as topics suggests that somewhere on All-Safe's website there is discussion of
24 the various Guardian Topics. A company discussing a competitor on its own website does not
25 alone amount to trademark infringement or generate confusion. A reasonably prudent consumer
26 would draw very little from the fact Guardian appeared as a topic on the All-Safe website. At
27 worst, a reasonable consumer might click on a topic "uncertain as to what they will find."
28 *Tabari*, 610 F.3d at 1179.

While very few consumers did click on the topics, those that did found blog posts discussing pool safety in general terms. There is nothing within the blog posts referencing Guardian.  The use of the term Guardian in the topic names is confusing, but it is confusing in that it makes little sense given the ultimate content of the posts tagged with the topic. It does almost nothing to suggest that Guardian is in any way the source of the pool nets for sale through All-Safe, and pool nets are not directly offered for sale anywhere in blog posts. Or to put it differently, it should not create confusion "as to the origin of the good or service" promoted on the website. *See Dreamwerks*, 142 F.3d at 1129.  Further, the Ninth Circuit has remarked that reasonable consumers "expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary." *Tabari*, 610 F.3d at 1179. The Court expects reasonable consumers to be capable of dismissing dead-end topics labels as oddities, indicative of almost nothing.

Guardian makes much of the fact that its Vice President has encountered a single consumer who appears to have potentially been confused by the Guardian Topics tags. Pl. MSJ at 13; Opp'n Def. MSJ at 9–11. That a single individual was confused does not constitute evidence that there is a likelihood that a "reasonably prudent consumer" would probably be confused by the website. Additionally, a single confused customer is not significant where there are many hundreds of thousands of views of All-Safe's website. *See Nutri/Sys., Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987).

The Court also notes that All-Safe's website prominently displays the All-Safe logo, and only this logo, on every page. This "broader context" of the topics pages mitigates against any possible confusion as to a connection with Guardian. *See Multi Time Mach., Inc.*, 804 F.3d at 936. Ultimately, while it is likely that a consumer would be confused about the point of the topics, it is not probable that a reasonably prudent and experienced online shopper would conclude that Guardian was affiliated with All-Safe or that Guardian was the source of All-Safe's nets, which were not even offered for sale on the website. Accordingly, the Court finds that Guardian has not borne its burden of demonstrating a likelihood of confusion.

Therefore the Court GRANTS summary judgment for All-Safe on Guardian's trademark infringement claim.

### B. Guardian's UCL and Common Law Unfair Business Practices Claims

The Ninth Circuit "has consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). Further, the likelihood-of-confusion test "also governs [a plaintiff's] state law claims of unfair competition." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 902 n.2 (9th Cir. 2002). Accordingly, since the Court finds no likelihood of confusion it also GRANTS summary judgment for All-Safe on Guardian's UCL and common law unfair business practices claims.

### C. All-Safe's Counterclaims

All-Safe has brought a claim for trademark infringement against Guardian on the basis of Guardian's inclusion of "all safe" or "all-safe" in its Google AdWords. Ironically, in All-Safe's Motion for Summary Judgment, it points out that "there is growing consensus in the case authorities that purchasing trademarked keywords for the purpose of competitive keyword advertising does not violate the Lanham Act." Def. MSJ at 13 (citing *Network Automation*, 638 F. 3d 1137; *Infostream Group Inc. v. Avid Life Media Inc.*, No. CV 12-09315 DDP, 2013 WL 6018030 (C.D. Cal. Nov. 12, 2013); *CollegeSource, Inc. v. AcademyOne, Inc.*, No. 10-3542, 2012 WL 5269213 (E.D. Pa., Oct. 25, 2012) ; *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, No. 06-0597, 2007 WL 30115 (E.D. Pa., Jan. 4, 2007)). The Court agrees with this assessment.

Further, as noted by the Ninth Circuit in *Tabari*,

> reasonable, prudent and experienced internet consumers are accustomed to such exploration by trial and error. [. . .] They skip from site to site, ready to hit the back button whenever they're not satisfied with a site's contents. They fully expect to find some sites that aren't what they imagine based on a glance at the domain name or search engine summary. Outside the special

          case of trademark.com, or domains that actively claim affiliation with the trademark holder, consumers don't form any firm expectations about the sponsorship of a website until they've seen the landing page—if then. This is sensible agnosticism, not consumer confusion. *See* Jennifer E. Rothman, *Initial Interest Confusion: Standing at the Crossroads of Trademark Law*, 27 Cardozo L. Rev. 105, 122–24, 140, 158 (2005).

610 F.3d at 1179. Guardian nowhere uses the All Safe mark on its website, and its domain name does not incorporate the phrase "all safe." Additionally, clear labeling of a search result as an advertisement can help eliminate any possibility of confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1153-54 (9th Cir. 2011). Here, the advertisement including the term "all safe pools" was clearly marked as an advertisement, which further counsels against a finding of confusion. Reply Def. MSJ at 19. Accordingly, the Court finds the fact that All-Safe has shown an instance where All-Safe's trademark appeared in an online advertisement for Guardian's website, which also clearly incorporated Guardian's non-infringing domain name, to be insufficient to justify a finding of a likelihood of confusion. *See id.*

      Accordingly, the Court GRANTS summary judgment for Guardian on All-Safe's claim for trademark infringement. Further, because as described above All-Safe's claims under the UCL and for common law unfair competition are co-extensive with All-Safe's trademark infringement claim, the Court also GRANTS summary judgment as to All-Safe's UCL and common law infringement claim.

## V.    DISPOSITION

      The Court GRANTS summary judgment for All-Safe as to Guardian's claims against All-Safe. The Court GRANTS summary judgment for Guardian as to All-Safe's counterclaims against Guardian.

1 DATED: June 1, 2017

_____
DAVID O. CARTER
UNITED STATES DISTRICT JUDGE